UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Prince S.J.Webber,

      Petitioner,

v.

B.R. Jett, Warden, and Federal
Bureau of Prisons,

      Respondents.

Civil No. 13-654 (ADM/JJK)

**REPORT AND RECOMMENDATION**

---

Prince S.J. Webber, Federal medical Center, P.O. Box 4600, Rochester, MN 55093, *pro se*.

Erika R. Mozangue, Esq., Gregory G. Brooker, Esq., and Pamela Marenteete, Esq., Assistant United States Attorneys, counsel for Respondents.

---

JEFFREY J. KEYES, United States Magistrate Judge

      This matter is before the Court on the Petition of Prince S.J. Webber for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. No. 1 ("Petition")). The case has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons discussed below, this Court recommends that the Petition be denied.

## I.    INTRODUCTION

      Petitioner is a federal inmate at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"). (Doc. No. 6, Decl. of Angela Buege ("Buege Decl.") ¶ 3.) Petitioner is serving a forty-year general court-marshal sentence

imposed by the United States Air Force for rape, larceny, breaking, and entering, and indecent assault. (*Id.*; *Id.* ¶ 3, Att. A at 5–6.) He has a projected release date of March 20, 2014, as a result of a reduction in sentence for "good time." (*Id.*) Under the Second Chance Act ("SCA"), Pub. L. No. 110–199, 122 Stat. 657 (2008), Petitioner will be designated to a Residential Reentry Center ("RRC") on June 20, 2013, nine months before his projected release date at the end of his sentence. (Doc. No. 7, Decl. of Andrea Peyla-Cossette ("Peyla-Cossette Decl.") ¶ 4.) Petitioner filed this habeas action on March 22, 2013. (Doc. No. 1, Pet.) He seeks an order from the Court immediately releasing him from FMC Rochester to his RRC placement. (*Id.* ¶ 15 ("State exactly what you want the court to do: Request . . . that this Honorable Court will . . . set the time frame for immediate release to RRC[.]").)

The record submitted by Respondents shows that on November 14, 2012, the unit staff at FMC Rochester reviewed Petitioner's pre-release RRC placement under the SCA. (Peyla-Cossette, Decl. ¶ 3, Att. A.) On November 14, 2012, Respondents notified Petitioner that the unit team at FMC Rochester recommended that Petitioner receive an RRC placement of greater than 270 days to allow for his successful reentry into the community. (*Id.* ¶ 3, Att..) The unit team then submitted the RRC referral to the Community Corrections Manager ("CCM"), the United States Bureau of Prisons ("BOP") official who determines the actual placement date based on bed space and other factors. (*Id.* ¶ 4, Att. B.) On December 27, 2012, the CCM provided Petitioner the RRC

placement date of June 20, 2013, which is 273 days of RRC placement before the end of Petitioner's sentence in March 2014. (*Id.* ¶ 4.)

On January 22, 2013, Petitioner wrote a letter to the Regional Director of the North Central Region of the BOP in which he requested placement in a camp for a minimum of 60 days prior to the RRC placement on June 20, 2013. (Doc. No. 1, Pet., Att. 1 at 15–16.) He also requested that the duration of his RRC placement be extended to one year. (*Id.*, Att. 1 at 15.) He contended that there was an error in the calculation of his sentence. (*Id.*) Years earlier, in the last months of 2007 and the beginning of 2008, Petitioner had contended that his good conduct time was not up-to-date. (*Id.*, Att. 1 at 17, 12/18/2007 BOP Administrative Remedy Appeal.) On February 14, 2008, Petitioner filed an appeal with the Central Office of the BOP in which he contended that the BOP should contact the U.S. military to confirm that he had good time credit of 940 days and that his end-of-sentence-release date was December 25, 2014. (*Id.*) On March 17, 2008, the National Inmate Appeals Administrator responded by informing Petitioner that he had earned 940 days of good time and his projected release date is "currently December 25, 2014." (*Id.*, Att. 1 at 18.)

On March 8, 2013, FMC Rochester Warden Brian Jett responded to Petitioner's January 22, 2013 letter informing Petitioner that he would not be eligible for transfer to a minimum security facility, such as a camp, because Petitioner's mental-health condition and consideration of public safety precluded any such transfer. (Pet., Att. 1 at 14; Doc. No. 6, Buege Decl. ¶ 6.) Warden Jett

informed Petitioner that his request for a year of RRC placement had been denied because Petitioner had been approved for 240 days of RRC placement with a June 20, 2013 transfer date.[1] (Pet., Att. 1 at 14 ("You were approved for 240 days of RRC and are scheduled to transfer to the RRC on June 20, 2013.").) Warden Jett did not address the computation of time issue in his March 2013 response to Petitioner. (*Id.*; Buege Decl. ¶ 6.)

Petitioner has asserted three grounds for habeas relief. First, he asserts that the BOP "failed to update and keep current" the sentencing computation. (Pet. ¶ 13(a).) As best this Court can tell, Petitioner contends that his end-of-sentence release date should be in December 2013 and not March 2014. In his second ground for relief, Petitioner alleges that the BOP failed to update its internal agency guidelines to reflect the SCA's provision of RRC eligibility for high-risk inmates under 42 U.S.C. § 17541(a)(1)(D). (Pet. ¶ 13(b).) In ground three, Petitioner contends that the BOP abused its discretion in its decision about Petitioner's RRC placement. (Pet. ¶ 13(c).) Finally, in ground four, Petitioner asserts that the BOP must afford him the greatest likelihood of successful reintegration into the community after service of his military prison sentence. (Pet. ¶ 13(d).) As noted above, Petitioner asks the Court to order Respondents

---

[1] In fact, the CCM had provided an RRC placement date of June 20, 2013, which will actually provide 273 days of RRC placement before the final release date of March 14, 2014.

4

to immediately release him to RRC placement "to insure the greatest likelihood of success for reentry into the community." (Doc. No. 1, at P. 8.)

## DISCUSSION

## I. LEGAL STANDARD

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). However, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## II. ANALYSIS

### A. First Ground for Relief: Computation of Sentence

Petitioner first contends that his sentence computation is in error. As noted above, he has a projected release date of March 20, 2014. His RRC placement is scheduled to begin on June 20, 2013, so that he will have the total of 273 days of RRC placement recommended by his unit team at FMC Rochester by the time that his sentence ends on March 20, 2014. But Petitioner asserts that the BOP failed to contact the U.S. military authorities before the 273-day RRC placement was decided upon, and, if the contact had been made and the sentencing-computation records updated, his release date would have been

5

determined to be at the end of 2013.  Thus, according to Petitioner, by starting the RRC placement on June 20, 2013, the BOP will only be providing about 180 days of RRC placement before the end-of-sentence release date, not the 273 days that the BOP deemed appropriate for Petitioner's reintegration into the community.

The records submitted by Respondents shows that the military provided the BOP with an updated military sentence computation in June 2012, which indicated that Petitioner's projected release date was March 20, 2014.  (Peyla-Cossette Decl. ¶ 5.)  And the BOP accordingly recomputed Petitioner's sentence computation on June 20, 2012, to reflect the March 20, 2014, release date.  (*Id.* ¶ 6.)  The BOP was required to accept the military sentence computation for Petitioner who was a military prisoner serving his sentence in a federal prison. (*See id.* ¶ 5, Att. C, United States Department of Justice, Federal Bureau of Prisons, Program Statement 5110.16, Administration of Sentence for Military Inmates ¶ 9 (Sep. 13, 2011) ("The [BOP's Designation and Sentence Computation Center] must accept the sentence computation provided by the military authorities[.]").)

Contrary to Petitioner's suggestion, there is no statutory or constitutional requirement that the BOP contact the military before finalizing the RRC

6

placement for a military prisoner.[2]  However, the record submitted by Respondent shows that in this case the BOP did contact the military about Petitioner's RRC placement in mid-November 2012, and the military had no objections to the BOP's recommendations.  (Peyla-Cossette Decl. ¶ 7.)  The BOP also forwarded a progress report to the military in February 2013 that indicated the length of Petitioner's RRC placement recommendation and that Petitioner had an RRC placement date of June 20, 2013.  This provided Petitioner with 273 days of RRC placement.  (*Id.*)  Again, the military raised no issue about Petitioner's RRC placement.

---

[2]     In Petitioner's reply memorandum of law, he also appears to argue that the BOP has issued internal memoranda, which improperly changed the agency's regulations implementing and interpreting the Second Chance Act because those memoranda were not issued after a period of public notice and comment.  (*See* Doc. No. 9, Pet'r's Reply Mem. at 6–8.)  Petitioner is referencing a June 24, 2010 memorandum cited in Respondents' brief that the BOP's Assistant Director, Correctional Programs Division, sent to chief executive officers of BOP staff.  Among other things, the memorandum removes the requirement that a Regional Director approve of all RRC placements longer than six months.  *See Robeson v. English*, Civ. No. 12-647 (/JSM), 2012 WL 4872674, at *7–8 & n.5 (D. Minn. Sep. 17, 2012) (discussing the June 24, 2010 memorandum and citing website where the memorandum is publicly available: http://www.famm.org/Repository/Files/ BOP%20Halfway%20House%20Guidance%206.24.10.pdf.).  It is unclear how Petitioner believes this memorandum affects his Petition for habeas relief, but it has nothing to do with the manner in which the military calculates the duration of Petitioner's sentence.  Regardless of Petitioner's argument that the BOP's use of this guidance memorandum was improper informal rulemaking, the memorandum is irrelevant to the computation of Petitioner's sentence.  Nor does the memorandum unreasonably interpret the framework of statutes and agency rules that govern RRC placement for federal inmates under the Second Chance Act.

There is nothing in the record before this Court that would allow it to conclude that the computation of Petitioner's end-of-sentence release date as March 20, 2014, results in his being in custody in violation of the laws or the Constitution of the United States. 28 U.S.C. § 2241(a). Even if such evidence were present, however, the remedy sought by Petitioner—immediate release to an RRC from the Federal Medical Center—would not be the proper solution for a sentence-computational error.

Further, this Court notes that in 2008 Petitioner asked the FMC Rochester staff members to contact the military personnel responsible for computing his sentence to move up his final release date to December 25, 2014. (Pet., Att. 1 at 17.) The record shows that at that time the BOP acknowledged that Petitioner had earned sufficient good time to have a release date of December 25, 2014, and the warden and regional director adjusted his sentence computation accordingly. (*Id.*, Att. 1 at 18.) And as noted above, Petitioner's current release date has been moved up further still, to March 20, 2014. Petitioner has failed to show any reason why remaining in custody until even this more favorable date involves some miscalculation of his end-of-sentence release date or would violate his rights under the Constitution or the laws of the United States.

### B. Second Ground for Relief: Denial of 60-Day Camp Placement

In the second ground for relief of the Petition, Petitioner contends that the BOP failed to update its internal policy Program Statement 7310.04 to include "individuals defined at title 42 U.S.C. § 17541(a)(1)(D)." (Pet. ¶ 13(b).) As best

8

this Court can determine, Petitioner is arguing that the BOP's internal policy guidelines failed to establish "a federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons . . . (D) ensure that priority is given to the reentry needs of high-risk populations, such as sex offenders, career criminals, and prisoners with mental health problems[.]"  *See* 42 U.S.C. § 17541(a)(1)(D).  Petitioner also states, in his second ground for relief, that Respondent Warden Jett denied Petitioner's request for at least 60 days camp placement.  (Pet. ¶13(b).)  Thus, it appears to this Court that Petitioner is arguing that by failing to place Petitioner in a camp,[3] Respondents will hold him in custody in violation of the SCA's requirement that the BOP must ensure that priority is given to reentry needs of high-risk prisoners, such as Petitioner.

However, the mere fact that the BOP is statutorily obligated to give priority to the reentry needs of high-risk prisoners does not mean that the BOP was required to give Petitioner a 60-day camp placement.  The BOP is given the

---

[3]  By "camp," it is unclear whether Petitioner means a minimum security institution, such as the Federal Prison Camp in Duluth, Minnesota, which has dormitory housing, a low staff-to-inmate ratio, and limited or no perimeter fencing. Federal Bureau of Prisons, Prison Types & General Information, http://www.bop.gov/locations/institutions/index.jsp.  Petitioner may be referring to the type of camp discussed in BOP Program Statement 7310.04 (1998), which discusses intermediate "camp placement" for at least 60 days before the date a federal inmate is accepted to a community corrections center.  (Pet. ¶ 13(b); United States Department of Justice, Federal Bureau of Prisons, Program Statement 7310.04, Community Corrections Center Utilization and Transfer Procedure ¶¶ 9(a)(1)–(5) (1998).)

9

authority to decide where to incarcerate a federal inmate. 18 U.S.C. § 3621(b). The SCA specifically provides that it does not limit or restrict the authority of the BOP to designate the place of the inmate's imprisonment. 18 U.S.C. § 3624(c)(4). Prison officials have broad discretion in transferring prisoners. *Hazen v. Reagen*, 16 F.3d 921, 926 (8th Cir. 1994) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Meachum v. Fano*, 427 U.S. 215, 228 (1976)). In addition, an inmate has no right to be incarcerated at any particular institution, absent a created statute, regulation, or policy. *Olim*, 461 U.S. at 249; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Meachum*, 427 U.S. at 228. Moreover, there is no constitutionally protected right or liberty interest in being transferred to a halfway house or to a camp placement. *See Mahfouz v. Lockhart*, 826 F.2d 791, 792 (8th Cir. 1987) (noting that there is no constitutional liberty interest in participation in a work release program). Neither the SCA nor any other statutory authority requires transfer of an inmate to any reentry facility. *See Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004) (noting that the SCA does not require placement in a community corrections center); *McFadden v. Morrison*, No. 06-1106 (MJD/JSM), 2006 WL 2583417, at *3 (D. Minn., Sep. 6, 2006).

Moreover, even if the BOP failed to provide in its own internal policy guidelines, any provision about giving priority to the needs of high-risk prisoners, a habeas action for release cannot be sustained for the BOP's purported violation of the SCA because noncompliance with a BOP Program Statement is not a violation of federal law. *Bania v. Roal*, No. 11-925, 2012 WL 1886485, at

*3 (D. Minn. May 23, 2012.)  Program Statements are internal agency guidelines that may be altered by BOP staff at will and are not subject to the rigors of the Administrative Procedures Act, including public notice and comment.  *Jacks v. Crabtree*, 114 F.3d 983, 985, N.1 (9th Cir. 1987); *see also Reno v. Koray*, 515 U.S. 50, 61 (1995) (characterizing BOP Program Statements as interpretive rules).

Petitioner's second ground for relief provides no basis to conclude that he is in custody in violation of the laws or Constitution of the United States.

### C. Grounds 3 and 4: Abuse of Discretion

In grounds three and four, Petitioner contends that the BOP abused its discretion by not providing him with a longer period of RRC placement before the end of his sentence.  (Pet. ¶ 13(c).)  As a high-risk inmate with mental problems and no resources, he contends that he should have been provided with a longer RRC placement to facilitate his reentry into the community.  Essentially, Petitioner argues that because of his circumstances, the BOP was required by the SCA to give him a longer period of RRC placement than it did.

The BOP is given the discretion to determine, on an individual basis, how much time each federal prisoner should spend at an RRC.  18 U.S.C. § 3624(c).  The SCA indicates the BOP should consider the following criteria in evaluating each inmate for RRC placement:  (1) the resources of the facility contemplated, (2) the nature and circumstances of the offense, (3) the history and characteristics of the inmate, (4) any statement by the sentencing court

11

concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of penal or correctional facility as appropriate, and (5) any pertinent policy statement issued by the United States Sentencing Commission. 18 U.S.C. § 3621(b). The BOP is better positioned than the courts to make decisions concerning the propriety and the time of RRC placements. *Hosna v. Groose*, 80 F.3d 298, 304 (8th Cir. 1996). Section 3624(c) does not require prisoner placement in an RRC; it only obligates the BOP to facilitate the prisoner's transition from the prison system. *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004); *Hewitt*, 2010 WL 1417654, at *5 (quoting *Lillie v. Cruz*, No. 09-506 (DWF/JJK), 2009 WL 2998176, at *3 (D. Minn., Sept. 15, 2009) ("Indeed, the statute does not ensure that an inmate will be placed at a community correctional facility at all.")). The statute sets the maximum amount of time that a prisoner can spend at an RRC as not more than twelve months but does not set any minimum amount of time that a prisoner must spend at an RRC. 18 U.S.C. § 3624(c)(1); *Miller*, 527 F.3d at 756.

Because the BOP is not required to provide any minimum amount of time for any inmate's RRC placement, to the extent Petitioner argues that he is entitled to a lengthier period in the RRC, his claims are meritless. In Petitioner's case, the BOP followed the law when it made its RRC determination with respect to Petitioner. When the FMC Rochester unit staff reviewed Petitioner for RRC placement under the SCA on November 14, 2012, it carefully considered all of the § 3621(b) factors in making the recommendation for Petitioner's RRC

12

placement. Staff members reviewed the resources of the contemplated RRC facility, the nature and circumstances of Petitioner's offense, and his history and characteristics, and they noted that there were no statements by the sentencing court or Sentencing Commission to review. They also noted that Petitioner has life skills and specialized job skills in biomedical or electrical work. Then, based on a careful consideration of the statutory factors, the unit team recommended an RRC placement of greater than 270 days as being sufficient to provide Petitioner the greatest likelihood of successful reentry into the community. Based on the unit team's recommendation, on December 27, 2012, the Community Corrections Manager provided Petitioner with an RRC placement date of June 20, 2013, which is 273 days of RRC placement. Petitioner is scheduled to be transferred to an RRC on June 20, 2013, approximately nine months prior to his projected release date. (Peyla-Cossette Decl. ¶ 3, Att. A.) Thus, the BOP complied with all of the requirements of the SCA in making its decision about Petitioner's RRC placement.

The fact that the SCA requires the BOP to give priority to the needs of high-risk prisoners does not change this result. That requirement does not mean, for example, that in the case of a high-risk prisoner like Petitioner the BOP must provide an RRC placement for any particular period of time or that the BOP must provide an RRC placement at all. The BOP made its recommendation for Petitioner's RRC placement after conducting the required individualized assessment. Because that individualized assessment was what was required by

13

the statute, Petitioner is not in custody in violation of the laws or Constitution of the United States.

**RECOMMENDATION**

Based upon the above, and upon all the records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. The Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. No. 1) be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Dated: May 14, 2013

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 28, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.