UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Prince S.J. Webber,

            Petitioner,

v.                              **MEMORANDUM OPINION AND ORDER**
                                      Civil No. 13-654 ADM/JJK

B.R. Jett, Warden, and
the Federal Bureau of Prisons,

            Respondents.

_____

Prince S.J. Webber, pro se.

Erika R. Mozangue, Esq., Gregory G. Brooker, Esq., and Pamela Marentette, Esq., United States Attorney's Office, Minneapolis, MN, for Respondents.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Petitioner Prince S.J. Webber's Objections[1] to Magistrate Judge Jeffrey J. Keyes' Report and Recommendation of May 14, 2013 [Docket No. 10] ("R&R"). In the R&R, Judge Keyes recommends denying Webber's Petition for Writ of Habeas Corpus [Docket No. 1]. After a thorough de novo review of the record and for the reasons stated below, Webber's Objections are overruled and Judge Keyes' R&R is adopted.

---

[1] On May 9, 2013, Petitioner filed a document entitled "Traverse with Memorandum of Law in Support" [Docket No. 9] ("Traverse"), which Judge Keyes addressed in his R&R. See R&R at 7 n.2. In response to Judge Keyes' R&R, Petitioner sent a letter ("Webber Letter") to this Court stating that the Traverse should serve as his Objection to the R&R. Webber Let. [Docket No. 11] ¶ 4. Pro se filings are to be construed liberally, and are held to less rigorous standards than would be expected of attorneys drafting legal documents, Estelle v. Gamble, 429 U.S. 97, 106 (1976); therefore, the Court will consider the Traverse and the Webber Letter as Petitioner's Objections.

## II.  BACKGROUND

The factual and procedural history of this dispute are more fully recited in Judge Keyes' R&R and are largely incorporated here by reference. See R&R at 1-5.  In brief summary, Webber is serving a forty-year court-martial sentence imposed by the United States Air Force for indecent assault, rape, breaking and entering, and larceny.  Webber is incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC") under the authority of the United States Bureau of Prisons ("BOP").  As Webber serves his sentence, he can earn good conduct time ("good time"), which can move his release date progressively earlier.  In November 2012, an FMC evaluation team reviewed Webber's case and recommended his incarceration should conclude with more than 270 days at a Residential Reentry Center ("RRC"), a program designed to ease a prisoner's transition from incarceration back to civilian life pursuant to the goals of the Second Chance Act, Pub. L. No. 110-199, 122 Stat. 657 (2008).  The BOP arranged for Webber's transfer to an RRC on June 20, 2013, to serve the remaining nine months of his sentence until his projected release date of March 20, 2014.  This arrangement would have given Webber exactly 273 days of RRC placement.

Webber filed a Writ of Habeas Corpus on March 22, 2013, requesting immediate transfer to an RRC placement.  See Pet.  Webber argues that his projected release date is not current and does not reflect "good time" earned since June 2012 and potentially earned as he continues to serve his sentence.  Webber argues that if he is transferred to an RRC on June 20,2013, he would receive less than the recommended 270 days of RRC time given his "good time" credits. Webber avers that the BOP is abusing its discretion by refusing to provide him with an "actual" 9-month or 12-month RRC placement.  See id. at 2, 6-8, 10.

2

Due to the appeals process, the Court recognizes that the June 20, 2013 date for transfer has already passed. This makes his request for early transfer largely a moot issue. Nonetheless, the Court will address the issues he raises as it may have future implications on his custody status and he is still serving this sentence.

## III.  DISCUSSION

In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. Because Webber does not specify what portion of the R&R he objects to, the Court conducts a brief review of the entire R&R.

**A. Habeas Corpus Relief Under 28 U.S.C. § 2241**

As a general rule, anyone in federal custody can challenge the legality of his confinement by filing a § 2241 habeas corpus petition in the district where he is confined. Archuleta v. Hedrick, 365 F.3d 644, 647-48 (8th Cir. 2004). A writ of habeas corpus is meant to provide a remedy for prisoners who are challenging the "fact or duration of their physical confinement and are *seeking immediate release or a speedier release*." Otey v. Hopkins, 5 F.3d 1125, 1130 (8th Cir. 1993) (emphasis added).

If the prisoner does not challenge the legal validity of his conviction or the length of his detention, then a habeas writ is not the proper remedy. Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996). A challenge to a prisoner's conditions of confinement is properly brought through a civil rights action, not a habeas action. See Muhammad v. Close, 540 U.S. 749, 750

3

(2004). A habeas petition is an extraordinary remedy, and is usually only available when the petitioner has "no other remedy." Slupkowski v. U.S. Att'y Gen., No. 09-1048, 2009 U.S. Dist. LEXIS 54858, at *2 (D. Minn. June 26, 2009). "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

**B. BOP Transfer Decisions**

Judge Keyes provided a thorough and accurate discussion of the law regarding the BOP's broad discretion in transferring prisoners to different facilities. R&R at 9-10, 12; Hazen v. Reagan, 16 F.3d 921, 926 (8th Cir. 1994); Olim v. Wakhinekona, 461 U.S. 238, 249-50 (1983). As discussed by Judge Keyes, the BOP is given the authority to decide where to incarcerate a federal inmate under 18 U.S.C. § 3621(b). There is no constitutionally protected right or liberty interest in being transferred to a halfway house or to a camp placement. Meachum v. Fano, 427 U.S. 215, 228 (1976). The Second Chance Act specifically states that it does not limit or restrict the authority of the BOP to designate the place of an inmate's imprisonment. 18 U.S.C. § 3624(c)(4); see Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir. 2004) (noting that the Second Chance Act does not require placement in a community corrections center); see also Hosna v. Groose, 80 F.3d 298, 304 (8th Cir. 1996). Thus, while the Second Chance Act sets the maximum duration of an RRC placement, it does not set any minimum amount of time that a prisoner must spend at an RRC. 18 U.S.C. § 3624(c)(1).

**C. Webber's Placement Objections**

Webber argues the BOP abused its discretion by denying him placement in a 60-day camp[2] and placing him in an RRC starting on June 20, 2013. He argues that when the BOP considered his RRC placement, the BOP did not anticipate that he would continue to earn "good time" and thus be released earlier than initially projected.[3] Webber reasons that since his sentence will end before the projected March 20, 2014 release date, he is entitled to an earlier entry into an RRC, in accordance with FMC's full recommended placement of more than 270 days.

On the record before the Court, a writ of habeas corpus under 28 U.S.C. § 2241 is not the proper vehicle for Webber to challenge the BOP's sentence computation and projection. The military provided the BOP with an updated military sentence computation in June 2012, which indicated Webber's projected release date was March 20, 2014. The BOP accordingly adjusted Webber's sentence computation. For a habeas petition to properly lie against the BOP's sentence computation, Webber first needed to exhaust his administrative remedies. Since Webber has not challenged the BOP's sentence computation through internal channels, Webber has not exhausted his administrative remedy options. Archuleta, 365 F.3d at 648-49. Webber's

---

[2] What Webber means by "camp" is unclear. It could be either a program or a minimum security facility.

[3] As a military prisoner serving his time in a federal prison, Webber also argues that the BOP should have contacted the U.S. military for an updated projected release date. Webber argues that if BOP had contacted the military, then his projected release date would have been easily updated. However, the record shows the BOP did contact the military in mid-November 2012 and the military had no objections to the BOP's recommendations for an RRC placement. And a progress report to the military in February 2013 informed the military of BOP's decision to place Webber in an RRC on June 20, 2013. The military had no objections at that time either.

RRC placement and 60-day camp placement objections fail for the same reason, as he has not appealed the BOP's determination through the appropriate BOP appeals process.

Even if Webber had exhausted his administrative remedies, his petition conflates the issue of sentence computation with the issue of RRC placement. Although his start date for the RRC program was calculated based on his projected release date, the recommendation and decision about RRC placement is separate from the release date. Webber is correct that "priority is given to the reentry needs of high-risk populations, such as sex offenders, career criminals, and prisoners with mental health problems." 42 U.S.C. § 17541(a)(1)(D). However, priority does not mean entitlement. As Judge Keyes explains, "the statutory obligation to give priority to the reentry needs of high-risk prisoners does not mean that the BOP was required to give [Webber] a 60-day camp placement." R&R at 9. The same logic holds true for the length of RRC placement. Since the Second Chance Act sets a maximum amount of time a prisoner can spend at an RRC but does not set a minimum, once the BOP has considered the § 3621(b) factors, its decisions about where and when to place a prisoner are given a great amount of deference. With this Petition, Webber is demanding a minimum term in RRC placement, something to which he has no statutory or Constitutional right.

In this case, the record shows that the FMC team evaluated Webber on the basis of the 18 U.S.C. § 3621(b) factors and recommended more than 270 days in an RRC. Webber was granted 273 days of RRC from June 20, 2013 to March 20, 2014. The fact that Webber's "good time" has the potential to reduce his overall sentence and thus his time in an RRC is irrelevant. Webber is not entitled to a minimum amount of time in RRC placement; therefore, he cannot claim that he is in custody in violation of the laws or Constitution of the United States.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner Prince S.J. Webber's Objections [Docket Nos. 9 and 11] to Magistrate Judge Jeffrey J. Keyes' May 14, 2013 Report and Recommendation [Docket No. 10] are **OVERRULED**;

2. The Report and Recommendation is **ADOPTED**;

3. Webber's Petition for Writ of Habeas Corpus Under § 2241 [Docket No. 1] is **DENIED**; and,

4. This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

                                            BY THE COURT:

                                            s/Ann D. Montgomery
                                            ANN D. MONTGOMERY
                                            U.S. DISTRICT JUDGE

Dated:  July 25, 2013.